**UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| JANE DOE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. |
| | ) | |
| RUSH UNIVERSITY SYSTEM FOR HEALTH; RUSH UNIVERSITY MEDICAL CENTER; and KIRK MCKENNA, | ) | **JURY DEMAND** |
| | ) | |
| Defendants. | ) | |
| | ) | |

**PLAINTIFF'S MOTION FOR LEAVE TO PROCEED UNDER PSEUDONYM OR, IN THE ALTERNATIVE, TO FILE UNDER SEAL**

This case involves the unauthorized access to and disclosure of Plaintiff's extremely sensitive Protected Health Information. Accordingly, pursuant to Plaintiff Jane Doe, through her undersigned counsel, hereby seeks leave to file the Complaint using a pseudonym to protect her from identify theft, medical identity theft, fraud and financial loss, discrimination, stigma and mental anguish that could and likely would flow from the public disclosure of her identity. Alternatively, Plaintiff seeks leave to file portions of the Complaint discussing Plaintiff's federally protected health information, as well as the designation sheet required by Local Rule 3.1(a), under seal to protect Plaintiff's identity and privacy interests. In support of this Motion, Plaintiff states as follows:

**BACKGROUND**

Defendants Rush University System for Health and Rush University Medical Center (collectively, "Rush") operate as a system of hospitals and medical facilities for patients to receive

medical diagnoses and treatment. Compl. ¶¶ 3-4. On September 22, 2025, Plaintiff was transported to one of Rush's medical facilities located at 2000 Ogden Avenue, Aurora, Illinois, after being found unconscious in her home. *Id.* ¶ 10. Plaintiff was 30 weeks pregnant at the time she was found. *Id.* ¶ 13. Upon arriving at Rush, it was determined that Plaintiff had tragically lost her unborn daughter while unconscious. *Id.* ¶¶ 13, 16. Rush physicians attributed numerous causes to the loss, including previously undiagnosed pre-eclampsia. *Id.* ¶ 17. Physicians also performed various blood tests while Plaintiff was hospitalized, and one of the blood tests revealed trace amounts of cocaine in Plaintiff's system. *Id.* ¶ 18.

Nobody except for Plaintiff's sisters had written authorization to receive Plaintiff's Rush medical records, including those pertaining to the loss of Plaintiff's unborn daughter and the presence of drugs in Plaintiff's system. *Id.* ¶ 19. However, shortly after Plaintiff was hospitalized, Plaintiff's ex-husband began circulating devastating rumors in Plaintiff's community that Plaintiff had killed her unborn child by using drugs while pregnant. *Id.* ¶ 24. As a direct and proximate result of Plaintiff's ex-husband obtaining details about Plaintiff's hospitalization at Rush, Plaintiff has suffered immense emotional distress, embarrassment and humiliation. *Id.* ¶ 27. Plaintiff was also subjected to a Department of Children and Family Services ("DCFS") investigation that caused her to lose access to her children for many months, with DCFS citing the presence of drugs in Plaintiff's system while Plaintiff was pregnant as the reason for its investigation. *Id.* ¶¶ 30-34.

In December 2025, three months after being hospitalized, Plaintiff submitted a written request to Rush inquiring about any unauthorized access to or disclosure of her medical record and Protected Health Information ("PHI"). *Id.* ¶ 50. Rush responded to that request in writing, confirming that at least one employee had "inappropriate" access to Plaintiff's medical record. *Id.* ¶ 51. In a follow-up communication Rush sent Plaintiff in July 2026, Rush told Plaintiff that it

investigated the Rush employee who had inappropriately accessed Plaintiff's Protected Health Information ("PHI") and concluded that that employee had not disclosed that information to any third parties. *Id.* ¶¶ __. However, since that time, Plaintiff has uncovered text messages revealing that on the day she was hospitalized, an individual who was not a member of Plaintiff's Rush care team texted details of Plaintiff's diagnoses to Plaintiff's ex-husband, proving that at least one Rush employee improperly accessed Plaintiff's Rush medical record and disclosed it to another party. *Id.* ¶ 58. As a result of this conduct, Plaintiff brings this action against Rush and her ex-husband alleging negligence, violations of the federal wiretap act (18 U.S.C. § 2510 *et seq.*), violations of the Illinois eavesdropping statute (720 ILCS 5/14 *et seq.*), publication of private facts and intentional infliction of emotional distress.

The U.S. Department of Health and Human Service ("HHS") has issued guidance providing that the exposure of PHI not only violates the Health Insurance Portability and Accountability Act of 1996 ("HIPAA") privacy rule, but it also can cause a "wide range of additional harm to the individual."[1] This harm includes, among other things, "discrimination, stigma, mental anguish, or other serious negative consequences to the reputation, health, or physical safety of the individual or to others identified in the individual's PHI."[2] Accordingly, Plaintiff hereby respectfully requests that the Court grant Plaintiff leave to proceed with this action under a pseudonym in order to avoid suffering additional stigma, mental anguish and other consequences she has already endured as a result of the unauthorized disclosure of her PHI.

## ARGUMENT

### I. Plaintiff Has Privacy Interests in Her PHI, Justifying the Use of a Pseudonym

[1] *See Use of Online Tracking Technologies by HIPAA Covered Entities and Business Associates*, U.S. DEP'T OF HEALTH & HUMAN SERVS., https://www.hhs.gov/hipaa/for-professionals/privacy/guidance/hipaa-online-tracking/index.html (last accessed Sept. 22, 2026).

[2] *Id.*

Federal courts, including the Seventh Circuit Court of Appeals, have held that because judicial proceedings are to be conducted in public, identifying the parties to an action serves an important public interest. *See, e.g.*, *Doe v. Loyola Univ. Chicago*, 100 F.4th 910, 913 (7th Cir. 2024); *Doe v. Trustees of Indiana University*, 101 F.4th 485, 491 (7th Cir. 2024). There are exceptions, however. The Seventh Circuit has held that filing an action using a pseudonym may be appropriate in cases where the party is a minor, is at risk of physical harm, or faces a risk of improper retaliation. *Doe v. Trustees*, 101 F.4th at 493. A party's desire to avoid embarrassment is not sufficient for justifying filing an action using a fictitious name or a pseudonym. *Id.* District court judges have discretion to permit pseudonyms when the "balance of harms justifies it." *Id.* at 492. The presumption that parties' identities are public information can be rebutted if a plaintiff can show that the harm to the plaintiff of disclosing her identity outweighs the harm of concealing her identity. *Doe v. ProHealth Care*, No. 23-cv-0296-bhl, 2023 WL 2760644, at *1 (E.D. Wis. Apr. 3, 2023) (quoting *Doe v. City of Chicago*, 360 F.3d 667, 669 (7th Cir. 2004)).

In both *Doe v. Loyola* and *Doe v. Trustees of Indiana*, the named plaintiffs were individuals who had been expelled from or disciplined by universities for physical assault or sexual misconduct the plaintiffs allegedly committed against another student. In each case, the Seventh Circuit reversed the decisions of the district courts allowing the plaintiffs to proceed with a pseudonym. The Seventh Circuit reasoned that neither of the plaintiffs in those cases satisfied the general exceptions outlined above—namely, neither plaintiff was a minor and neither alleged he was at risk of physical harm. The plaintiffs attempted to argue that the disclosure of their identities may lead to "retaliation" against them, but the Seventh Circuit determined in both cases that the "retaliation" that may justify filing an action with a pseudonym is distinct from the desire to keep embarrassing information or one's own alleged misconduct out of the public eye. *See Doe v.*

*Loyola*, 100 F.4th at 913 ("Although we recognize that no one wants a college's finding of misconduct broadcast in the pages of the Federal Reporter, a desire to keep bad news confidential, if adequate to justify secrecy, would lead to a norm of anonymity across swaths of civil and criminal litigation."); *Doe v. Trustees of Indiana*, 101 F.4th at 492 (holding that the plaintiff's argument that he would face stigmatization from the community and the public at large was not sufficient for justifying the use of a pseudonym).

Despite the Seventh Circuit's holdings in *Doe v. Loyola* and *Doe v. Trustees of Indiana*, federal courts in this Circuit before and since those cases have recognized that anonymity in a case involving a breach of data privacy, as is the case here, appropriately balances the public interest of transparency in court proceedings and a litigant's legitimate right to privacy. Most recently, in *Doe v. Veradigm, Inc.*, No. 1:25-cv-10147, 2025 WL 2977746 (N.D. Ill. Oct. 22, 2025) (Rowland, J.), the plaintiffs similarly sued defendants for violations of the Electronic Communication Privacy Act and related claims arising out of the defendants' alleged improper disclosure of the plaintiffs' protected health information to Google via its online marketing systems. In holding that the plaintiffs could proceed under pseudonyms, the court considered the fact that the "right to medical privacy is recognized under both federal and Illinois law" and cited published DHH guidance and the statute requiring physicians in Illinois to keep patient information confidential. *Id.* at *1. The court went on to hold that because the plaintiffs' PHI would likely be discussed in open court and in various filings, requiring the plaintiffs to use their actual names would violate a recognized privacy interest. *Id.* Critically, the court also distinguished *Doe v. Loyola* and *Doe v. Trustees of Indiana* by holding that "the injury litigated against [in *Veradigm*] is the same interest Plaintiffs seek to protect through pseudonyms: disclosure of Plaintiffs' PHI." *Id.* at *2. Therefore, the court

reasoned, revealing the plaintiffs' identities would only exacerbate the harm they were seeking to remedy by bringing suit. *Id.*

Such is also the case here. Unlike the plaintiffs in *Doe v. Loyola* and *Doe v. Trustees of Indiana*, Plaintiff does not seek to conceal embarrassing information: rather, she seeks to prevent the additional disclosure of information that should never have been made public in the first place, and that both state and federal law require be kept confidential. Both federal and Illinois law recognize an individual's right to medical privacy. Congress formalized its recognition of this right in 1996, when it enacted HIPAA. *See, e.g.*, *Nat'l Abortion Fed'n v. Ashcroft*, 04 C 55, 2004 WL 292079, at *2 (N.D. Ill. Feb. 6, 2004). Since then, both the federal government and the Illinois legislature have enacted a variety of laws and regulations prohibiting the unauthorized disclosure of patients' PHI. *See, e.g.*, 45 C.F.R. §§ 160, 164 (prohibiting health care providers from disclosing PHI to third parties without express written authorization); 410 ILCS 50 *et seq.* (same); 815 ILCS 530 *et seq.* (requiring data collectors to implement and maintain reasonable security measures to protect personal information concerning an Illinois resident); 210 ILCS 85/6.17 (prohibiting hospital workers from disclosing the nature of services provided to patients). Both the court in *Veradigm* and other district courts adjudicating similar data privacy cases have concluded that the protection of a plaintiff's right to medical privacy is sufficient for allowing a plaintiff to proceed under a pseudonym. *See, e.g.*, *Doe 1 v. Chestnut Health Systems, Inc.*, No. 1:24-cv-01475-JEH-RLH (C.D. Ill. Aug. 12, 2025) (granting plaintiffs leave to file under a pseudonym where plaintiffs brought class action pertaining to the improper disclosure of PII and PHI); *Doe v. Genesis Health Sys.*, No. 23-cv-4209-JES-JEH, 2024 WL 3890164 (C.D. Ill. Aug. 21, 2024) (same); *Doe v. ProHealth Care*, 2023 WL 2760644, at *1 (holding that plaintiff suing healthcare company for

improper disclosure of his PHI could file under pseudonym or risk incurring 'the injury litigated against').

There is no prejudice to Defendants in allowing Plaintiff to file this action under a pseudonym. First and foremost, all Defendants are already aware of Plaintiffs' identity. Plaintiff is one Defendant's ex-wife, and Rush authored and transmitted the communications attached to the Complaint to Plaintiff directly before this suit was filed. Accordingly, Plaintiff respectfully requests that she be permitted to file the Complaint under a pseudonym.

## II. Alternatively, Plaintiff's PHI Should Be Redacted

In the alternative, if the Court holds that Plaintiff is not permitted to proceed under a pseudonym, Plaintiff respectfully requests that she be permitted to file the Complaint under seal. Specifically, Plaintiff seeks to redact portions of the Complaint discussing her medical diagnoses while at Rush. As is the case with pseudonyms, motions to seal are disfavored because of the general public policy of keeping litigation open to the public view. *See, e.g.*, *Strait v. Belcan Engineering Grp., Inc.*, No. 11-cv-1306, 2012 WL 2277903, at *1 (N.D. Ill. June 18, 2012). However, Federal Rule of Civil Procedure 26(c) provides that a court "may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense . . . ." Courts in this Circuit have granted motions to seal documents containing a plaintiff's PHI. *See, e.g.*, *Hammock v. Res-Care, Inc.*, No. 1:19-cv-04808-RLY-MJD, 2021 WL 4928145, at *3 (S.D. Ind. Jan. 25, 2021).

The specifics of Plaintiff's diagnoses at Rush is not relevant to the issue of liability for Plaintiff's privacy claims, nor is it relevant to Plaintiff's claims pertaining to the intentional infliction of emotional distress or publication of private facts. Requiring that Plaintiff publicly disclose her precise medical diagnoses during her hospitalization subjects Plaintiff to unnecessary

annoyance or oppression, as it unnecessarily breaches Plaintiff's recognized right to the privacy of her medical information. As discussed above, both federal and Illinois law recognize an individual's right to medical privacy. Federal guidance from the DHH has cautioned that the revelation of an individual's PHI can lead to public stigma and other harms, and as the data privacy cases cited herein demonstrate, the unauthorized or unnecessary disclosure of PHI can also lead to the sale or dissemination of an individual's PHI to marketing companies looking to target their products toward individuals with specific diagnoses. Redacting Plaintiff's medical diagnoses does not harm the public interest and appropriately balances Plaintiff's individual privacy rights with the right of public access to judicial proceedings.

## CONCLUSION

For the reasons set forth herein, Plaintiff respectfully requests that she be permitted to file the Complaint using a pseudonym to protect her federally and state-recognized right to privacy of medical information. In the alternative, Plaintiff respectfully requests that the Court permit Plaintiff leave to file the Complaint under seal.

Dated: September 23, 2026

Respectfully submitted,

JANE DOE

*By: Katie A. O'Neill*_________
*One of her attorneys*

Katie A. O'Neill
**O'NEILL LAW LLC**
125 S. Clark St., Ste. 1700
Chicago, IL 60603
(312) 242-2002
katie@olawlit.com